# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BRIAN PORTEOUS, | Case No. 1:21-cv-00529-SAB (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| R. AVILA, et al., | FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |
| | (ECF Nos. 41, 44.) |

Plaintiff Larry Brian Porteous is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed November 30, 2022, re-filed on December 1, 2022, with the proper Rand-notice. (ECF Nos. 41, 44.)

## I.

## RELEVANT BACKGROUND

This action proceeds against Defendant R. Avila for retaliation and against Defendants R. Avila and K. Welch for a due process violation.

Defendants filed an answer to the complaint on September 20, 2021. (ECF No. 12.)

The Court issued the discovery and scheduling order on October 22, 2021. (ECF No. 16.)

///

1    As previously stated, on November 30, 2022, Defendants filed the instant motion for

2    summary judgment, which was re-filed with the proper Rand-notice on December 1, 2022.  (ECF

3    Nos. 41, 44.)  Plaintiff filed an opposition on January 26, 2023, and Defendants filed a reply on

4    February 23, 2023.  (ECF Nos. 47, 50.)

5                                              **II.**

6                                    **LEGAL STANDARD**

7    **A.      Summary Judgment Standard**

8    Any party may move for summary judgment, and the Court shall grant summary

9    judgment if the movant shows that there is no genuine dispute as to any material fact and the

10   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

11   omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

12   position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

13   particular parts of materials in the record, including but not limited to depositions, documents,

14   declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

15   absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

16   support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

17   other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

18   Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

19   2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

20   In judging the evidence at the summary judgment stage, the Court does not make

21   credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509

22   F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

23   inferences in the light most favorable to the nonmoving party and determine whether a genuine

24   issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

25   City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation

26   omitted).

27   In issuing at these Findings and Recommendations, the Court carefully reviewed and

28   considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

On July 16, 2020, officer R. Avila claimed to have found and confiscated a four-inch metal inmate manufactured tool located in Plaintiff's property.  On July 22, 2020, in an unrelated Rules Violation Report (RVR), Avila addressed the confiscation and described the tool as a wrench utilized to remove bolts from Plaintiff's locker.  However, Avila presented no evidence of the existence of the alleged tool.

On July 22, 2020, officer R. Avila falsified evidence as part of Rules Violation Report (RVR) Log No. 7018370.  In her report, Avila wrote that she searched and found "temporary storage files" on a SD-card she allegedly found during a cell search of Plaintiff's living quarters on July 16, 2020.  She further wrote that there were two "screen shots" of the files, with one containing a picture of Plaintiff's confiscation slip.  Avila claimed the "screen shots" were taken on July 22, 2020, at approximately 12:33.  However, the "screen shots" issued to Plaintiff and used as evidence to find him guilty had a date and time of July 27, 2020, at 11:22.

On August 26, 2020, during the hearing phase of the RVR Log No. 7018370, Plaintiff called Defendant R. Avila as a witness.  When Plaintiff asked, "why did you remove the bolts?" She responded, "I did not remove any bolts, I removed the nuts, to search underneath the locker." Then Defendant was asked, "[d]id you put the bolts back?", and she responded, "No, I put the nuts back."

Defendant Avila's testimony is a lie and impossible for her to have accomplished, not "difficult" not "improbable, but "impossible."

On August 26, 2020, Defendant correctional lieutenant K. Welch was the senior hearing officer for the RVR Log No. 7018370.  Plaintiff was found guilty of RVR Log No. 7018370 for

the specific act of possession of an unauthorized cellular component (a SD-card). The SD-card is not unauthorized. Plaintiff received the SD-card as part of the MP3 music program offered through access securepak. This vendor and music program is authorized at Valley State Prison and at 107 general population prisons.

On August 26, 2020, Defendant Welch knowingly disregarded undisputed proof that Defendant Avila lied in the RVR Log No. 7018370 report and during direct questioning thereby retaliating against Plaintiff by finding his guilty. Defendant Welch also retaliated against Plaintiff by excessively punishing Plaintiff after the guilty finding. Every other inmate who is found guilty of the same charge received thirty days loss of credit and only thirty days loss of yard. However, Plaintiff was assessed thirty day loss of credit, ninety day loss of packages, ninety day loss of dayroom, and ninety day loss of telephone calls. Plaintiff suffered severe mental health issues and became severely depressed and suicidal.

There are security measures taken by Valley State Prison to ensure the anti-tampering of the bank of four lockers assigned to bunks 3up, 3low, 4up and 4low, throughout the entire prison. There are two log bolts driven into the concrete foundation below every locker in the prison. The lockers are then bolted to the concrete using an impact drill. For the four side-by-side lockers assigned to bunks 3 and 4, a hole is drilled towards the top of the locker, from one locker into its neighboring locker. There is then a nut/bolt combination utilized to secure one locker to its neighboring locker causing the bank of four lockers to become one large locker bank. Then the final step is every nut is welded to its bolt counterpart. This ultimately ensures that no locker can be moved or tampered with without first cutting or grinding all the welded nut and bolts off the locker.

Plaintiff knows of the security measures because he was assigned to the maintenance crew charged with bolting, drilling, welding, and securing all the lockers, bunks, tables, and benches throughout the entire prison.

Because Plaintiff was found guilty of RVR Log No. 7018370 for possession of an unauthorized SD-card, he lost employment privileges for three and a half years.

**B.      Statement of Undisputed Facts[1],[2]**

1.      From January 2020 through present, officer Avila has served as a coverage relief officer at various positions throughout Valley State Prison (VSP).  (Declaration of officer Avila (Avila Decl.) ¶ 3.)

2.      As a coverage relief officer, officer Avila's duties included conducting cell searches, confiscating and documenting unauthorized inmate items, watching for unusual inmate behavior, issuing Rules Violation Reports (RVRs) for inmate rule violations, and assisting in serving meals.  (Avila Decl. ¶ 3.)

3.      The CDCR Department Operations Manual section 54030.1 regarding Authorized Personal Property Schedule (APPS) outlines the items that are not authorized for inmates to have in their possession.  (Avila Decl. ¶ 3 & Ex. A.)

4.      On July 16, 2020, officer Avila was redirected from her assigned post as a Facility A yard officer to assist in the mass cell search of Facility B, where Inmate Larry Porteous (CDCR No. K08420) was housed.  (Avila Decl. ¶ 4.)

5.      A mass cell search is a systematic search of all cells in a designated area.  (Avila Decl. ¶ 4.)

6.      Mass cell searches are often ordered when a particular disturbance or other safety or security threat is present.  (Avila Decl. ¶ 4.)

7.      A mass cell search requires the coordination of many correctional staff—often 20 to 30 officers—and various supervisory staff—including lieutenants and sergeants—who are tasked from throughout the prison to assist.  (Avila Decl. ¶ 4.)

8.      When an officer is directed to assist with a mass cell search, the officer generally does not personally select the specific inmate cells they search but is instead directed at random to search a limited number of cells.  (Avila Decl. ¶ 4; Declaration of L. Arabyan Ex. A, Pl. Dep. at 61.)

---

[1] Hereinafter referred to as "UF."

[2] As to several statement of facts, Plaintiff adds additional information or simply disagrees with several of the undisputed facts presented by Defendants which is improper and does not establish that the fact is disputed.

9.      During a mass cell search, the inmates are moved out of their cells before the start of the cell searches.  (Avila Decl. ¶ 4.)

10.     Plaintiff was not present during the July 16, 2020 search of his cell and officer Avila did not speak with Plaintiff during the search.  (Avila Decl. ¶ 4; Pl. Dep. at 42, 54, 90.)

11.      Officer Avila issued a confiscated property receipt for the confiscated items on July 16, 2020.  (Avila Decl. ¶ 5 & Ex. B, RVR Log No. 7018370.)

12.     Before issuing the July 16, 2020 confiscated property receipt, officer Avila advised Plaintiff in the cell search property receipt that a more thorough search of the contents of the SC cards would be conducted.  (Avila Decl. Ex. B.)

13.     Officer Avila was accompanied during the cell search by at least two Investigative Services Unit (ISU) officers.  (Avila Decl. ¶ 6.)

14.     ISU officers assisted officer Avila in the process of photographing the confiscated items and storing them into an evidence locker.  (Avila Decl. ¶ 6.)

15.     On July 22, 2020, officer Avila conducted a review of the SD card contents and found they contained unauthorized temporary folders which indicated they had been utilized with a cell phone at some point.[3]  (Avila Decl. Ex. B.)

16.     On July 22, 2020, Plaintiff was issued RVR Log No. 7018370 for possession of an unauthorized cellular component.  (Avila Decl. ¶ 7.)

17.     Officer Avila never discussed Plaintiff's grievances with him at any time.  (Avila Decl. ¶ 7; Pl. Dep. at 42, 51, 54, 90.)

18.     On August 12, 2020, Plaintiff was provided with the required twenty-four-hour notice period under California Code of Regulations, title 15, section 3320, that he could be contacted for  a hearing for his RVR Log No. 7018370 twenty-four hours after that notice. (Declaration of K. Welch (Welch Decl.) ¶ 4; Avila Decl. Ex. B.)

19.     On August 26, 2020, Plaintiff was contacted for his August 26, 2020 hearing for

---

[3] The fact that Plaintiff claims that the "photograph" of the evidence was actually taken on July 27, 2020, not July 22, 2020, does not dispute the fact that Avila declares she "conducted a review" of the SD card and its contents on July 22, 2020.  Thus, even if the photograph was allegedly taken on July 27, 2020 (which Plaintiff has not indisputably established), it is immaterial and does not create a dispute of fact that unauthorized cellular telephone content was located.

his RVR Log No. 7018370.  (Welch Decl. ¶ 4.)

20.    On August 26, 2020, lieutenant Welch as a correctional lieutenant and senior hearing officer at Valley State Prison conducted an RVR disciplinary hearing for RVR Log No. 7018370.  (Welch Dec. ¶ 4.)

21.    Plaintiff identified officer R. Avila and correctional sergeant B. Bean as witnesses for the August 26, 2020 hearing for RVR Log No. 7018370.[4]  (Welch Decl. ¶ 4.)

22.    Officer Avila attended and answered questions at the August 26, 2020 hearing for RVR Log No. 7018370.  (Avila Decl. ¶ 8.)

23.    Officer Avila was cross-examined by Plaintiff at the August 26, 2020 hearing for RVR Log No. 7018370.  (Avila Decl. ¶ 8.)

24.    Correctional sergeant B. Bean was also present and cross-examined by Plaintiff at the August 26, 2020 hearing for RVR Log No. 7018370.  (Avila Decl. ¶ 8.)

25.    Plaintiff did not identify any other witnesses or any Receiving and Release (R&R) sergeant by name as potential witnesses for the August 26, 2020 hearing on RVR Log No. 7018370.[5]  (Welch Decl. ¶ 4; Pl. Dep. at 110.)

26.    Following the presentation of evidence at the August 26, 2020 hearing for RVR Log No. 7108370, Plaintiff was found guilty for possession of a cellular telephone component in violation of California Code of Regulations, title 15, section 3006(c), a Division "F" offense, and assessed ninety days loss of day room privileges, phone privileges, and package privileges. (Welch Decl. ¶ 5 & Ex. A.)

27.    Plaintiff submitted a CDCR Form 602 grievance, Log No. 18512, which Plaintiff dated as submitted on July 19, 2020, in which Plaintiff complained that on July 16, 2020, officer Avila confiscated his orthopedic boots with insoles and a number of other items and requested

---

[4] The fact that Plaintiff contends he also requested a plant operation maintenance mechanic employee as a witness does not dispute the fact as stated herein.

[5] Plaintiff attempts to dispute this fact by stating he indisputably requested other witnesses to be present at the August 26, 2020, hearing.  (Pl. Opp'n at 6, 15.)  However, the statement presented by Defendants states that no other witnesses were identified "by name" at the August 26, 2020.  Indeed, Defendant Welch acknowledged that on the day of hearing, Plaintiff requested to call any maintenance or Inmate Day Labor Program officers available to testify that day, but Plaintiff did not "provide sufficient identifying information regarding those or any additional witnesses. (Welch Decl. ¶ 4.)

1    that all his medically authorized items be returned.  (Declaration of L. Villagomez (Villagomez

2    Decl.) ¶ 11 & Ex. C.)

3        28.    Plaintiff submitted a CDCR Form 602 grievance, Log No. 19028, in connection

4    with the July 16, 2020 cell search conducted by officer Avila dated as submitted on July 20,

5    2020.  (Villagomez Decl. ¶ 11 ( Ex. D.)

6        29.    Plaintiff submitted a CDCR Form 602 grievance, Log No. 36639, in which he

7    complained that the SC card he was found guilty of possessing was neither contraband nor

8    unauthorized and that officer Avila lied in the related RVR and while being questioned during

9    the RVR hearing about the proof, dated as submitted on September 2, 2020.  (Villagomez Decl. ¶

10   11 & Ex. C.)

11       30.    According to Plaintiff's prison records, he did not submit any CDCR Form 602

12   staff complaint grievances against officer Avila that passed screening before the July 16, 2020

13   cell search.  (Villagomez Decl. ¶¶ 9-12 & Ex. A.)

14       31.    Plaintiff's prison records reveal that he submitted one appeal that was screened

15   out, Log No. VSP-B-19-00236, which Plaintiff dated as submitted on February 5, 2019, and

16   cancelled at the first level of review on February 5, 2019, due to time limits.  (Villagomez Decl.

17   ¶ 10 & Ex. B.)

18       32.    Plaintiff stated at deposition that he was not chilled from exercising his First

19   Amendment right of filing inmate grievances, and he did submit several grievances after the July

20   2020 cell search and RVR.  (Pl. Dep. at 60.)

21       **C.    Analysis of Defendants' Motion**

22       Defendants argue that there is no genuine dispute of material fact on the merits of

23   Plaintiff's retaliation claim against Defendant Avila because he cannot establish the requisite

24   casual connection between his grievance and the cell search or RVR, there was no chilling of his

25   right to file grievances, and Avila's actions served a legitimate penological purpose.  Defendants

26   also argue that there is no genuine dispute of material fact on the merits of Plaintiff's due process

27   claims because Plaintiff was provided all the notice he was due and was allowed to call and

28   cross-examine two witnesses he identified.

1  In opposition, Plaintiff argues that when he advised Defendant Avila that he was going to
2  "write her up", she retaliated against him by issuing a false RVR which caused him to lose his
3  job.  Plaintiff further argues that he was punished and lost his job for allegedly possessing an
4  inmate manufactured tool for which he was never charged or found guilty of possessing, thereby
5  violated his due process rights.  Lastly, Plaintiff argues that he requested additional witnesses
6  during the hearing on his RVR.

7        1.   Retaliation Claim Against Defendant Avila

8  Plaintiff contends that on July 16, 2020, Defendant Avila conducted a cell search and
9  confiscated numerous personal items alleged as contraband.  Then, on July 22, 2020, Defendant
10  Avila issued a false RVR in retaliation for exercising his rights under the First Amendment to
11  file grievances.

12  "Prisoners have a First Amendment right to file grievances against prison officials and to
13  be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)
14  (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a
15  viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a
16  state actor took some adverse action against an inmate (2) because of (3) that prisoner's
17  protected conduct, and that such action (4) "chilled the inmate's exercise of his First Amendment
18  rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v.
19  Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff
20  must establish a nexus between the retaliatory act and the protected activity.  Grenning v.
21  Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Mere verbal harassment or abuse does
22  not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. §
23  1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not
24  rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

25        a.   **Casual Connection Between Grievance and Cell Search or RVR**

26  To satisfy the causation element, Plaintiff must show that his constitutionally protected
27  conduct was a " 'substantial' or 'motivating' factor" for the alleged retaliatory action.  Brodheim,
28  584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

1   1989)). "[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause,

2   meaning that the adverse action against the plaintiff would not have been taken absent

3   the retaliatory motive.' " Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (as

4   amended) (citation omitted). An action colored by some degree of bad motive does not amount

5   to a constitutional violation if that action would have been taken anyway. See Crawford-El v.

6   Britton, 523 U.S. 574, 593 (1998); Hartman v. Moore, 547 U.S. 250, 260 (2005) (holding that if

7   retaliation is not the but-for cause, "the claim fails for lack of causal connection between

8   unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the

9   official's mind."). Retaliation is not established simply by showing adverse activity by a

10  defendant after protected conduct; rather, a plaintiff must show a nexus between the

11  two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). However, "timing can

12  properly be considered as circumstantial evidence of retaliatory intent." Bruce v. Ylst, 351 F.3d

13  1283, 1288 (9th Cir. 2003) (quoting Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).

14      With respect to Defendant Avila's July 16, 2020 cell search and July 22, 2020 RVR,

15  Plaintiff has not established that a causal connection exists between his asserted protected

16  conduct, i.e., filing grievances and Defendant Avila's action in searching his cell and issuing an

17  RVR.

18      Initially, Defendant Avila declares that she was not aware and never spoke with Plaintiff

19  about any of his inmate grievances, and Plaintiff acknowledges that he never directly spoke with

20  Avila about his grievances. (Avila Decl. ¶ 8; Pl. Dep. at 42.) Plaintiff's prison records do not

21  reveal any CDCR Form 602 staff complaint grievances against Defendant Avila that passed

22  screening prior to the July 16, 2020 cell search. (UF 30.) Plaintiff's prison records reveal that he

23  submitted one appeal that was screened out, Appeal Log No. VSP-B-19-00236, which Plaintiff

24  dated as submitted on February 4, 2019, and which the VSP grievance office received on

25  February 5, 2019 and cancelled at the first level of review on February 5, 2019, due to time

26  limits. (UF 31.) However, this grievance was submitted over a year prior to the search art issue

27  and it was screened out. (Id.)

28  ///

Plaintiff also submitted a CDCR Form 602 grievance, Log No. 18512, which he dated as submitted on July 19, 2020, in which Plaintiff complained that on July 16, 2020, officer Avila confiscated his orthopedic boots with insoles and a number of other items and requested that all his medically authorized items be returned.  (UF 27.)  Plaintiff also submitted a CDCR Form 602 grievance, Log No. 19028, in connection with the July 16, 2020 cell search conducted by officer Avila dated as submitted on July 20, 2020.  (UF 28.)  Plaintiff submitted a third CDCR Form 602 grievance, Log No. 36639, in which he complained that the SC card he was found guilty of possessing was neither contraband nor unauthorized and that officer Avila lied in the related RVR and while being questioned during the RVR hearing about the proof, dated as submitted on September 2, 2020.  (UF 29.)

However, these grievances post-date the cell search.  (UF 27-29.)  Although two of the grievances pre-date by a couple days the RVR that Avila issued, it is undisputed that Defendant Avila never discussed Plaintiff's grievances with him at any time.  (UF 17.)

Further, Defendant Avila has produced uncontroverted evidence that correctional officers are required to conduct random cell searches.  Indeed, it is undisputed that From January 2020 through present, officer Avila has served as a coverage relief officer at various positions throughout VSP.  (UF 1.)  As a coverage relief officer, officer Avila's duties included conducting cell searches, confiscating and documenting unauthorized inmate items, watching for unusual inmate behavior, issuing Rules Violation Reports (RVRs) for inmate rule violations, and assisting in serving meals.  (UF 2.)   The CDCR Department Operations Manual section 54030.1 regarding APPS outlines the items that are not authorized for inmates to have in their possession.  (UF 3.)

On July 16, 2020, officer Avila was redirected from her assigned post as a Facility A yard officer to assist in the mass cell search of Facility B, where Inmate Larry Porteous (CDCR No. K08420) was housed.  (UF 4.)  A mass cell search is a systematic search of all cells in a designated area.  (UF 5.)  Mass cell searches are often ordered when a particular disturbance or other safety or security threat is present.  (UF 6.)  A mass cell search requires the coordination of many correctional staff—often 20 to 30 officers—and various supervisory staff—including

1    lieutenants and sergeants—who are tasked from throughout the prison to assist.  (UF 7.)   When

2    an officer is directed to assist with a mass cell search, the officer generally does not personally

3    select the specific inmate cells they search but is instead directed at random to search a limited

4    number of cells.  (UF 8.)

5         During the July 16, 2020 cell search, Avila declares that she "discovered and confiscated

6    several unauthorized items including an unauthorized cellular component."   (Avila Decl. ¶ 5.)

7    Although Plaintiff disputes Defendant Avila's contention that contraband was located in his cell,

8    he fails to submit admissible evidence to raise a genuine issue of material fact.  In addition,

9    Plaintiff has not established by admissible evidence that Defendant Avila's July 16, 2020 search

10   of his cell was unusual or for the purpose of harassment. Defendant Avila has also presented

11   uncontroverted evidence that she found contraband in Plaintiff's cell on July 16, 2020.

12        Although Plaintiff alleges that he informed Defendant Avila to save all his property

13   because he was going to "write her up", the mere fact that Plaintiff was subsequently issued an

14   RVR does not prove it was motivated by retaliation.  See, e.g., Huskey v. City of San Jose, 204

15   F.3d at 899 (retaliation claim cannot rest on the "logical fallacy of post hoc, ergo propter hoc,

16   literally, 'after this, therefore because of this.'").  Based on the results of the cell search which

17   included SD cards, Defendant Avila conducted a review of the cards content and found they

18   contained unauthorized temporary folders which indicated they had been utilized with a cell

19   phone at some point.  (UF 15.)  Thus, even if Plaintiff threatened to write up Avila after his cell

20   was searched, Defendant Avila had already confiscated the unauthorized SD cards.  A First

21   Amendment retaliation claim requires showing that Defendant Avila issued the RVR out of

22   "retaliatory animus" to "silence and to punish" Plaintiff, and not for some other reason, i.e.,

23   discouraging inmates from filing grievances or to reduce the number of grievances filed.

24   Shepard v. Quillen, 840 F.3d 686, 689-91 (9th Cir. 2016).  Plaintiff has not shown that the filing

25   of prior grievances and/or threat to write Defendant Avila up was the substantial or motivating

26   reason behind the cell search on July 16, 2020 or the issuance of the RVR on July 22, 2020.

27

28

Plaintiff has therefore not carried his burden of demonstrating a genuine issue for trial as to causation.[6]

Plaintiff states that Defendant "Avila retaliated and singled me and my bunk area out and only searched my bunk area the entire time.  She did not assist the other officers who were forced to search multiple inmate bunk areas while she only searched and destroyed my bunk area .. again." (Pl. Opp'n at 22 ¶ 4.)  Plaintiff's statement is unsupported by any evidence.  Further, whether Defendant Avila searched other cells on July 16, 2020, is irrelevant as it is undisputed that a mass (not targeted) search was conducted on July 16, 2020 involving several officers and contraband was confiscated from his cell.[7]  Thus, Plaintiff's unsupported contention does not lead to an inference that Defendant Avila searched Plaintiff's cell and issued a false RVR in retaliation for the exercise of his rights under the First Amendment.

Lastly, Plaintiff's reference to Defendant Avila's discovery response in which she stated that "the action of dispersing pepper spray inside Plaintiff's locker resulted in a grievance being issued against Defendant Avila. (Pl. Opp'n at 62.)  However, this statement does not establish a causal connection between Plaintiff and Avila had no conversation about his prior grievance activity and it remains undisputed that Avila never discussed Plaintiff's grievances with him at any time. (Pl. Dep. at 42, 51, 54, 90.)  A single prior inmate grievance submitted several months before without more does not establish a First Amendment retaliation claim.  This grievance was dated as submitted by Plaintiff on February 4, 2019, over a year before the July 2020 cell search and it concerned an alleged incident that occurred over twenty-two months before the July 2020 cell search.  See, e.g., Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2004) (a

---

[6] The Court notes that even if Plaintiff sufficiently established a retaliatory motive against Defendant Avila, as explained below, the claim is disposed of based on the Defendant's evidence that RVR Log No. 7018370 advanced a legitimate justification pursuant to California Code of Regulations, title 15, section 3006(c) (20).  See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (after plaintiff satisfies his burden of showing that defendant's conduct was motivated by plaintiff's constitutionally protected conduct, burden shifts to defendant to establish that the decision would have been no different even in the absence of the protected conduct). For the reasons explained below, Defendant Avila has demonstrated there was a valid basis for RVR Log No. 7018370 which was independent of any protected activity by Plaintiff.

[7] In addition, it is undisputed that Defendant Avila was accompanied during the cell search by at least two ISU officers.  (UF 13.)

1 thirteen month lapse is too long to support an inference of causality); Benson v. Cady, 761 F.2d

2 335, 342 (7th Cir. 1985) (insufficient chronology of events presented when alleged retaliatory

3 action occurred five months after prisoner instituted a lawsuit); Quiroz v. Horel, 85 F.Supp.3d

4 1115, 1126 (N. D. Cal. 2015) (lapse over one year was too long).

5         **b.**        **Chilling of Right to File Inmate Grievances**

6         The Ninth Circuit has expressly rejected the idea that a prisoner must "demonstrate

7 a *total* chilling of his First Amendment rights to file grievances...in order to perfect a retaliation

8 claim. Speech can be chilled even when not completely silenced." Rhodes, 408 F.3d at 568.

9 (emphasis in original). see also Cohen v. Summervold, 276 F. App'x 642, 643 (9th Cir.

10 2008) ("The fact that Cohen continued to file grievances and federal actions despite the

11 alleged retaliation cannot be used to determine that he failed to state a claim that his First

12 Amendment rights were chilled...."). Instead, the Ninth Circuit directs courts to ask whether the

13 alleged retaliatory acts "would chill *or* silence a person of ordinary firmness from future First

14 Amendment activities." Rhodes, 408 F.3d at 568–69 (citation omitted).

15         Defendant argues it is undisputed that Plaintiff was not chilled from exercising his First

16 Amendment right of filing inmate grievances because he submitted at least three grievances after

17 the July 16, 2020, incident at issue in this action. The core inquiry is not whether Plaintiff

18 was chilled by Defendant's actions, but whether a person of ordinary firmness would

19 be. See Brodheim, 584 F.3d at 1274 ("The determination of an individual prisoner in persisting

20 in filing grievances in spite of a threat of retaliation does not indicate he has not suffered a

21 constitutional wrong."). Here, assuming the validity of Plaintiff's allegations, as this Court must,

22 a retaliatory cell search and issuance of a false RVR would certainly chill a prisoner of ordinary

23 firmness. While Plaintiff may have filed grievances after the alleged misconduct, Defendant has

24 not disputed the chilling effect that the adverse action would have if it were indeed retaliatory as

25 alleged by Plaintiff. Thus, the Court finds that Defendant has not met her burden on this element

26 of Plaintiff's retaliation claim.

27 ///

28 ///

### c.    Advancement of Legitimate Correctional Goal

Plaintiff  has not established that Defendant Avila's search of his cell and issuance of RVR did not advance a legitimate penological goal.

To reiterate, it is undisputed that as a coverage relief officer, Defendant Avila's duties included conducting cell searches, confiscating and documenting unauthorized inmate items, watching for unusual inmate behavior, issuing Rules Violation Reports (RVRs) for inmate rule violations, and assisting in serving meals.  (UF 2.)   The CDCR Department Operations Manual section 54030.1 regarding APPS outlines the items that are not authorized for inmates to have in their possession.  (UF 3.)

On July 16, 2020, officer Avila was redirected from her assigned post as a Facility A yard officer to assist in the mass cell search of Facility B, where Inmate Larry Porteous (CDCR No. K08420) was housed.  (UF 4.)  A mass cell search is a systematic search of all cells in a designated area.  (UF 5.)  Mass cell searches are often ordered when a particular disturbance or other safety or security threat is present.  (UF 6.)  A mass cell search requires the coordination of many correctional staff—often 20 to 30 officers—and various supervisory staff—including lieutenants and sergeants—who are tasked from throughout the prison to assist.  (UF 7.)   When an officer is directed to assist with a mass cell search, the officer generally does not personally select the specific inmate cells they search but is instead directed at random to search a limited number of cells.  (UF 8.)

It is further undisputed that a mass search was conducted on July 16, 2020, and several items were removed from Plaintiff's cell.  (Avila Decl. ¶ 5, Ex. B.)  More specifically, Avila confiscated nineteen excess compact discs (CDs), one altered Hiteker Tablet (a touch-screen electronic tablet, similar to an iPad), six unauthorized San Disk micro-SD cards because they were over the allowed limit, and one inmate manufactured tool approximately four inches in length in a form of a metal wrench.  (Id.)

It is undisputed that Defendant Avila conducted a review of the SD card contents and found they contained unauthorized temporary folders which indicated they had been utilized with a cell phone at some point.  (UF 15.) Although Plaintiff contends that he never possessed a

1    unauthorized cellular component because he was allowed to possess a "chip", he provides no

2    evidence other than his own unsubstantiated statement.  California Code of Regulations, title 15,

3    section 3006(c)(2), states in pertinent part, an inmate may not be in possession of "Any cellular

4    telephone or wireless communication device accessory and/or component including but not

5    limited to, a subscriber identity module (SIM card), memory storage device, cellular phone

6    battery, wired or wireless headset, and cellular phone charger."  Cal. Code Regs. tit. 15, §

7    3006(c)(20).  There is no evidence to controvert the conclusion that the search of Plaintiff's cell

8    and confiscation of an unauthorized cellular component served a legitimate correctional goal of

9    ensuring safety and security of the institution, correctional officers, and inmates.  Plaintiff has

10   not produced evidence upon which a reasonable jury could conclude that retaliation rather than

11   the penological interests, was the true motivation for confiscating the unauthorized SD card from

12   him.

13          **d.    Loss of Prison Job-Adverse Action**

14          To the extent that Plaintiff now claims that Defendant Avila retaliated against him by

15   informing construction supervisor Chris Kellener that an inmate manufactured weapon was

16   located in Plaintiff's cell which lead to the loss of his prison job, such claim is unfounded.  In

17   support of his argument, Plaintiff submits a CDCR 128 authored by CSI Chris Kellener, the

18   Institutional Classification Committee (ICC) Chrono, dated October 6, 2020, and discovery

19   response by Defendant Avila acknowledging that she informed construction supervisor Chris

20   Kellener that an inmate manufactured weapon was found in this cell on July 16, 2020.

21          However, the CDCR 128 by Chris Kellener simply states that based on the discovery of a

22   manufactured tool it was recommended that Plaintiff not be reassigned due to sensitivity, safety

23   and security of the Inmate Daily Labor Program to prevent access to tools and other equipment.

24   (Pl. Opp'n Ex. J.)

25          Plaintiff has failed to set forth any evidence that Defendant Avila informed Chris

26   Kellener of the weapon because he filed previous grievances.  Avila properly documented the

27   confiscated metal tool approximately 4 inches in length, in the form of a wrench, on the July 16,

28   2020, confiscated property receipt.  (Pl. Opp'n at 75.)  In addition, photographic evidence of the

inmate manufactured tool was taken as part of the investigation to RVR Log No. 7018370 and submitted as part of Avila's discovery responses.  (ECF No. 50, Avila Suppl. Decl. ¶ 3, Ex. A.) Further, Plaintiff has failed to demonstrate that Defendant Avila's statement to Chris Kellener did not advance a legitimate penological correctional goal in preserving institutional safety. Removing an inmate from a prison job based on conviction of possession of a manufactured weapon serves a legitimate penological interest.  In addition, and detrimental to Plaintiff' claim, the undisputed evidence demonstrates that Chris Kellener recommended that Plaintiff not be reassigned to the Inmate Day Labor program, and the Classification Committee elected to remove Plaintiff from the IDL work list due to sensitivity, safety, and security.  (Pl. Opp'n, Ex. J.)  Thus, Defendant Avila did not remove Plaintiff from his work assignment.  Accordingly, Plaintiff's alleged retaliation claim based on the loss of his prison job fails as a matter of law.

For the reasons explained above, the undisputed material facts demonstrate that Plaintiff cannot establish that Defendant Avila retaliated against him by searching his cell and issuing an RVR, and summary judgment should be entered in favor of Defendant Avila on the retaliation claim.

2.    Due Process Claim Against Defendants Avila and Welch

Plaintiff argues that Defendant Avila violated his due process rights because she did not provide evidence for the inmate-manufactured tool that was listed in the narrative for of RVR Log No. 7018370, which resulted in the loss of his prison job.  Plaintiff further alleges that Defendant Welch violated his due process rights by finding him guilty for RVR 7018370 and denied Plaintiff's witnesses and legal assistance.

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues

presented are legally complex.  Wolff v. McDonnell, 418 U.S. 539, 563–71 (1974).  As long as the five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).  The "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ."  Hill, 472 U.S. at 455-56.

### a.    Lack Evidence Possession Inmate Manufactured Weapon/Loss of Prison Job

Plaintiff does not state a cognizable claim for his claim that his due process rights were violated due to the loss of his prison job.  In RVR Log No. 7018370, Defendant Avila noted that an inmate manufactured tool was located in Plaintiff's cell, and provided photographic evidence of the metal tool.  Avila acknowledges that she informed construction supervisor Chris Kellener of such fact, which Plaintiff contends lead to the loss of his job assignment.

"The threshold question in due process analysis is whether a constitutionally protected interest is implicated." Baumann v. Arizona Dep't of Corr., 754 F.2d 841, 843 (9th Cir. 1985). The Due Process Clause does not create a property or liberty interest in prison employment. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004).   Prisoners thus have no constitutional right to have a job in prison.  See Cunningham v. Bird, No. 1:22-cv-00306-JLT-SAB (PC), 2012 WL 1308261, at *1 (E.D. Cal. May 2, 2022), report and recommendation adopted, 2022 WL 2119045 (E.D. Cal. June 13, 2022).   Accordingly, because Plaintiff had no constitutional right to his prison job, he did not suffer a due process violation by being terminated from his job.

### b.    Guilty Finding on Possession of Unauthorized Cellular Telephone Component

In this case, it is undisputed Plaintiff was given advance written notice of the RVR hearing, opportunity to be heard, written statement of the guilty finding, and that there was some evidence in support of his guilty finding.  More specifically, Plaintiff was provided with the required twenty-four-hour notice period under California Code of Regulations, title 15, section

3320 that he could be contacted for a hearing regarding RVR Log No. 7018370.  (Pl. Opp'n at 5.)  The RVR was served a copy of the RVR on July 29, 2020, and the hearing was held by senior hearing officer Defendant Welch on August 26, 2020.  (Welch Decl. Ex. A; Pl. Opp'n at 5.)  Plaintiff concedes that he identified Defendant Avila and non-party officer Bean as witnesses for the August 16, 2020 hearing and both were called as witnesses.  (Id.)  Defendant Avila attended and answered questions at the August 26, 2020 hearing.  (UF 22.)  Defendant Avila was also cross-examined by Plaintiff at the hearing.  (UF 23.)  Sergeant B. Bean was also cross-examined by Plaintiff at the RVR hearing.  (UF 24.)  Plaintiff did not identify another other witnesses or R&R sergeant by name, to serve as a witness for the August 26, 2020 RVR hearing. (UF 25.)

Following the presentation of evidence at the RVR hearing, Plaintiff was found guilty for possession of a cellular telephone component in violation of section 3006(c) and assessed ninety days' loss of day room privileges, phone privileges, and package privileges.  (UF 26.)  The guilty finding was based on the statements of Defendant Avila, Plaintiff, and non-party correctional sergeant B. Bean at the August 26, 2020 RVR hearing, the RVR, photographs of a screen shot of the files contained in the SD card, and the confiscated property receipt and the Hiteker tablet, and Plaintiff's not-guilty plea (Welch Decl. ¶ 5, Ex. A), which constitutes "some evidence" to support the RVR guilty finding.

Plaintiff argues that his due process rights were violated because he was not provided legal assistance or additional witnesses for his RVR hearing.  In the first amended complaint, Plaintiff contends he was not afforded proper due process because he was not provided "legal assistance."  (ECF No. 7 at 7.)  However, under Wolff, legal assistance shall be provided when the prisoner is illiterate or if the issues are complex.  Wolff, 418 U.S. at 569-70.  In this instance, it is clear that the charges are not complex and, as demonstrated by his operative complaint, Plaintiff is not illiterate.  Plaintiff has failed to present any evidence to support a finding that he was entitled to legal assistance at the RVR August 26, 2020 hearing.

With regard to Plaintiff's contention that his due process rights were violated by the denial of additional witnesses at the hearing, no genuine issue of material fact exists.  While

1   Plaintiff requested additional witnesses on the day of the hearing, Plaintiff concedes that he did
2   not identify the witnesses for the hearing on RVR Log No. 7018370.  (Pl. Opp'n at 6.)  Plaintiff
3   claims that he requested three additional witnesses that he did not identify by name-an
4   unidentified plant operation maintenance mechanic employee, an unidentified inmate day labor
5   employee, and an unidentified correctional sergeant.  (Id. at 6.)  Defendant Welch acknowledges
6   that on the day of hearing, Plaintiff requested to call any maintenance or inmate day labor
7   program officers available to testify that day, but Plaintiff did not "provide sufficient identifying
8   information regarding those or any additional witnesses." (Welch Decl. ¶ 4.)  Thus, contrary to
9   Plaintiff's contention, Defendant Welch set forth a proper reason for denying the unidentified
10  witnesses at the August 26, 2020 RVR hearing.  The Constitution does not require prison
11  officials to identify and present witnesses at disciplinary hearings, and the decision to deny the
12  request for unidentified witnesses does not constitute a denial of Plaintiff's right to call witnesses.
13  See, e.g., Tooker v. Mak, No. 20-cv-07373-HSG, 2022 WL 2668381, at *9 (neither the
14  Constitution or state regulations require "prison officials to investigate rules violations and
15  identify and present witnesses at hearings.  Prison officials' decision not to identify inmate-
16  witnesses for Plaintiff does not constitute a denial of Plaintiff's right to call witnesses.").
17  Because Plaintiff was afforded all the process that was due him under the federal Constitution in
18  the context of a prison disciplinary proceeding, Defendants' motion for summary judgment
19  should be granted.

20                                              **IV.**

21                                  **RECOMMENDATIONS**

22          Based on the foregoing, it is HEREBY RECOMMENDED that:

23          1.      Defendants' motion for summary judgment be granted; and

24          2.      The Clerk of Court be directed to enter judgment in favor of Defendants.

25          These Findings and Recommendations will be submitted to the United States District
26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-**
27  **one (21) days** after being served with these Findings and Recommendations, the parties may file
28  written objections with the Court.  The document should be captioned "Objections to Magistrate

                                            20

Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 30, 2023**

_____
UNITED STATES MAGISTRATE JUDGE